UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

CARLEY PEREZ,

                Plaintiff,

                                              <u>COMPLAINT</u>

       -against-                                 <u>PLAINTIFF DEMANDS</u>
                                                    <u>TRIAL BY JURY</u>

THE CENTER FOR FAMILY SUPPORT, INC.,

                Defendant.

---------------------------------------------------------------x

       Plaintiff Carley Perez ("Perez"), by her attorneys, Lichten & Bright, P.C., alleges for her complaint against defendant The Center for Family Support, Inc. ("CFS") as follows:

<u>INTRODUCTION</u>

       1.     Plaintiff brings this action to seek relief for sexual harassment on the job, a sexually hostile work environment, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law §*et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("City Human Rights Law").

       2.     Plaintiff is a former employee of CFS who worked as a home care aide until she was terminated for leaving the site of a work assignment (a developmentally disabled man's studio apartment) before her shift was over because the man she was caring for sexually assaulted her – and repeatedly masturbated and disrobed in front of her – and her repeated efforts

to reach a supervisor to request help or guidance as to what to do went unanswered.  The CFS

client in question had a history of sexually harassing female home care aides, including Perez,

that was known to CFS, which despite this knowledge assigned Perez to care for him on the night

of the assault and failed to provide Perez with any protection from sexual harassment or even any

instructions about what to do in the event that the sexual harassment she had already been

subjected to recurred or escalated.


## JURISDICTION AND VENUE

3.     Jurisdiction of this Court exists over the Title VII claims pursuant to 28 U.S.C. §§

1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).  Supplemental jurisdiction exists over New

York State and New York City Human Rights Laws claims pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2).  The

defendant resides in this District and a substantial part of the events or omissions giving rise to

plaintiff's claims occurred in this District.

5.     Plaintiff filed a charge of discrimination with the U.S. Equal Employment

Opportunity Commission ("EEOC") on September 13, 2017.  A copy of the EEOC charge is

annexed as Exhibit 1 to this complaint.

6.     On April 3, 2018, the EEOC issued a Notice of Right to Sue to plaintiff in

connection with her charge of discrimination.  A copy of the Notice of Right to Sue is annexed as

Exhibit 2 to this complaint.

7.     Pursuant to N.Y.C. Admin. Code § 8-502(c), a copy of this complaint is being

served upon the New York City Commission on Human Rights and Corporation Counsel.

2

PARTIES

8.      Perez was employed by CFS from March 2017 until her termination on or around

June 1, 2017.  She currently resides in New York, New York.

9.      CFS is a New York not-for-profit corporation that provides support services and

assistance to developmentally disabled persons.  Its headquarters office and principal place of

business is located at 333 Seventh Avenue, 9th Floor, New York, New York 10001.

10.     At all times relevant to this action, CFS was Perez's employer within the meaning

of Title VII, the New York State Human Rights Law and the New York City Human Rights Law.

11.     Upon information and belief, CFS has over 1,000 employees.


FACTS

12.     Plaintiff began working for CFS in March of 2017 as a Direct Support

Professional, caring for developmentally disabled adults in their homes.

13.     Upon commencing employment with CFS, plaintiff's main assignment was to

care for a client ("T"), a developmentally disabled man who is approximately 6' 5" tall and over

300 pounds in weight.  Her work involved spending time in T's apartment, assisting him with

routine daily life tasks like cooking and cleaning and taking him out to run errands like food

shopping.  Her schedule was Saturdays and Sundays from 12:00 noon to 8:00 p.m.

14.     While plaintiff was caring for T, he sometimes removed all of his clothes and

exposed his genitalia to her, while also making sexually explicit remarks to her like "I know you

like it" and "I know you like black men." (T is African-American.)  T sometimes held his penis

in his hand while making these remarks.  T also made other sexually explicit and charged

3

remarks to plaintiff, saying things to her about her body, such as "that's nice," "you should shake it" and "you should let me touch it," while looking and/or pointing at her rear end. These sorts of comments were made whenever plaintiff was in the same proximity as T, including in his apartment, as well as in common areas such as the hallways and recreation room of his building, and in CFS vehicles, in front of other staff members, and occurred dozens of times, from the start of plaintiff's employment with CFS until her last day of work.

15.     Plaintiff complained to her supervisor, David Sanders ("Sanders"), about T's inappropriate, aggressive and frightening sexual behavior and remarks numerous times and told Sanders (whose title is Assistant Manager) that she was uncomfortable working with T because of his sexually abusive and threatening behavior. The first time she complained to Sanders about this problem was in or around her second week on the job. Thereafter, plaintiff reported T's sexual harassment to Sanders a dozen or more times, including in person when seeing Sanders at the building T lived in.

16.     Like other clients served by CFS, T has a "care plan" that contains a behavior chart or history. T's behavior chart indicated that he had a history of removing his clothes and exposing himself to female employees of CFS who were assigned to care for him and that he behaves better with male employees.

17.     Other female employees of CFS had complained about or reported T's habit of taking his clothes off and walking around his apartment naked in the past, prior to the commencement of plaintiff's employment with CFS.

18.     On or about April 22, 2017, plaintiff took T to a ShopRite supermarket to do food shopping with him. While at the supermarket, T became violent and loud; called plaintiff a

4

"bitch"; spat at her repeatedly; raised his fists into the air, yelled and cursed; and violently slammed a shopping cart into several garbage cans. Several security guards came and escorted T and Perez out of the store. The security guards recognized T and one of them said "Oh, this guy again" or words to that effect. Perez tried calling and texting her supervisor (David Sanders) to report the incident and ask for instructions about what to do but Sanders did not respond to her until the evening, after her shift was over.

19.     Two days after the ShopRite incident occurred, Perez told Sanders that she was uncomfortable working with T because of the ShopRite incident and T's habit of exposing himself and directing sexual comments to her (including while holding his penis) and requested a change of assignment. Sanders told her that there was an open overnight shift, caring for a woman, and agreed to assign her to that shift. Beginning on or around April 27, 2017, Perez was assigned to work Thursday through Saturday, from 11:00 p.m. to 9:00 a.m., with her main duty being to care for a female client of CFS ("JB"), who lived in the same building as T.

20.     On the Sunday of Memorial Day weekend, Sanders called Perez and asked her to cover a midnight shift that night, which was not part of her regular schedule. She believed she would be caring for JB but when she arrived at JB's apartment, there was another CFS employee in JB's apartment. The other employee (whose first name is Christine) called Sanders to ask who was supposed to watch T and Sanders told her that she (Christine) should stay with JB and plaintiff should go to T's apartment. Although plaintiff did not want to go to T's apartment, she did as she was instructed because she was worried she would lose her job if she did not go.

21.     While Perez was in T's apartment to care for him that Sunday night, T turned on the TV and turned off all of the lights, then proceeded to sit on his couch with a blanket over his

5

lap and masturbate. Perez told T that she could go wait outside of his apartment if he needed

"alone time" and then stepped out into the hall and waited in the lobby for a while. Perez then

returned to T's apartment. When she entered his apartment, he was in the bathroom. Plaintiff

announced her presence to him and he then came out of the bathroom, naked, with his penis in

his hand and said "I know you like this" and "I know you like this black thing." Perez was sitting

at a table, with her arm resting on the table, while this was taking place and T walked over to her

and placed his scrotum and testicles on her arm, near her elbow. Perez stood up and told T that

his behavior was inappropriate and made her uncomfortable, asked him him to get dressed, and

left the apartment (which is a studio apartment) to go into the hallway, where she tried calling

and texting Sanders (her supervisor) to tell him what was happening. Sanders didn't answer his

phone or respond to Perez's texts or voice mail messages. After waiting about fifteen minutes

(with no response from Sanders), Perez went back into the apartment and saw that T was now

dressed. Perez sat back down at the table and T sat down on his couch. T then pulled the blanket

onto his lap and began to masturbate again. Perez went back out into the hall and tried calling

Sanders but Sanders did not answer the phone or return her calls. (It was approximately 5:00

a.m. at the time.) Perez also texted Sanders, telling him that T had "exposed himself numerous

times through this shift and has been using some offensive language" and that she did "not feel

comfortable being in his apartment alone and if possible I would like to go home early." (Perez

sent these texts at 5:19 a.m. and 5:20 a.m.) After waiting for but not receiving any response,

Perez left and went home. It was approximately 6:00 a.m. when she left and she was very upset

and frightened by what had been going on throughout the night and did not feel safe staying

there, and was upset that she had been unable to reach her supervisor to report what was going on

and seek assistance or instructions regarding what to do.

22.      Sanders did not respond to plaintiff's calls and texts until 7:36 a.m., when he texted her to ask where she was.  He then texted her, asking her to call him.  Perez responded (by text) that she would rather speak with him in person about what had happened.  When he did not respond to her text message, she called Sharon Albright ("Albright"), who is a Residence Manager at CFS, and asked her if she had heard about the incident.  Albright's response was that she had heard something about plaintiff leaving her shift early.  Plaintiff then explained to Albright what had happened and Albright's response was to ask plaintiff "What could you have done to prevent it?"  Albright expressed no concern about what had happened to Perez.

23.      On or around June 1, 2017, plaintiff met with Albright and a woman from CFS's human resources department at CFS's offices at 333 Seventh Avenue, New York, New York. The woman from HR told plaintiff that she was being fired for leaving her shift early.  Perez asked her (the HR representative) if she was aware of why she had left and then explained to her what had happened.  The HR representative told plaintiff that she had not been told about the incident.  Plaintiff stated that she thought that it was unfair that she was being fired for leaving work early because she was being sexually assaulted and abused and could not reach her supervisor to ask for help or guidance.  Perez was fired anyway.

24.      As Perez's employer, CFS had a legal duty to provide her with a work environment free of sexual abuse and harassment.

25.      Perez's exposure to sexual harassment, abuse, assault and a sexually hostile work environment on the job was the result of CFS's negligence and reckless disregard for Perez's safety and statutorily protected rights.

FIRST CAUSE OF ACTION

26.     Defendant CFS subjected Perez to sexual harassment and discrimination and a hostile work environment because of her sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

27.     As a result of CFS's discriminatory acts and negligence, plaintiff has suffered and will continue to suffer monetary damages, mental anguish and humiliation.

28.     CFS engaged in these discriminatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

SECOND CAUSE OF ACTION

29.     Defendant CFS subjected Perez to a sexual harassment and discrimination and a hostile work environment because of her sex, in violation of the New York State Human Rights Law, N.Y. Executive Law § 296(1).

30.     As a result of CFS's discriminatory acts and negligence, plaintiff has suffered and will continue to suffer monetary damages, mental anguish and humiliation.

31.     CFS engaged in these discriminatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

THIRD CAUSE OF ACTION

32.     Defendant CFS subjected Perez to sexual harassment and discrimination and a hostile work environment because of her sex, in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1).

33.     As a result of CFS's discriminatory acts and negligence, plaintiff has suffered and

8

will continue to suffer monetary damages, mental anguish and humiliation.

34.     CFS engaged in these discriminatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.


## FOURTH CAUSE OF ACTION

35.     CFS discharged Perez because of her opposition to employment practices made unlawful by Title VII, in violation of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a).

36.     As a result of CFS's retaliatory acts, plaintiff has suffered and will continue to suffer injury, including loss of income and benefits, mental anguish and humiliation.

37.     CFS engaged in these discriminatory and retaliatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.


## FIFTH CAUSE OF ACTION

38.     CFS discharged Perez because of her opposition to acts prohibited by the New York State Human Rights Law, in violation of that statute's anti-retaliation provision, N.Y. Executive Law 296(7).

39.     As a result of CFS's retaliatory acts, plaintiff has suffered and will continue to suffer injury, including loss of income and benefits, mental anguish and humiliation.

40.     CFS engaged in these discriminatory and retaliatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

SIXTH CAUSE OF ACTION

41.     CFS discharged Perez because of her opposition to acts prohibited by the New York City Human Rights Law, in violation of that statute's anti-retaliation provision, N.Y.C. Admin. Code § 8-107(7).

42.     As a result of CFS's retaliatory acts, plaintiff has suffered and will continue to suffer injury, including loss of income and benefits, mental anguish and humiliation.

43.     CFS engaged in these discriminatory and retaliatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a)     awarding compensatory damages in an amount not yet ascertained, on each cause of action, including economic damages and damages for mental anguish and humiliation;

(b)     awarding punitive damages in an amount not yet ascertained, on the Title VII and New York City Human Rights Law causes of action;

(c)     awarding other make-whole relief, including back pay and benefits and front pay and benefits, on the fourth, fifth and sixth causes of action;

(d)     declaring that the acts and practices complained of are in violation of Title VII, the New York State Human Rights Law and the New York City Human Rights Law;

(e)     awarding plaintiff reasonable attorney's fees and the costs of this action, on each cause of action; and

(f)     granting such other and further relief as this Court deems just and proper.

<u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial

by jury on all of the causes of action herein.

Dated: May 31, 2018

                          LICHTEN & BRIGHT, P.C.

By: _____
                        Daniel R. Bright (DB 9373)
                        387 Park Avenue South, 5th Floor
                        New York, New York 10016
                        (646) 588-4871
                        Attorneys for Plaintiff Carley Perez

11